**McALLISTER BROTHERS, INC.,**
**Petitioner-Appellee-Cross-Appellant,**

v.

**A & S TRANSPORTATION CO. and**
**Modern Transportation Co.,**
**Respondents-Appellants,**

and

**Pollution Control Industries, Inc., and**
**PCI International, Inc.,**
**Respondents-Cross-Appellees.**

**Nos. 711, 799, Dockets 79–7785, 79–7805.**

United States Court of Appeals,
Second Circuit.

Argued March 5, 1980.

Decided May 2, 1980.

---

Emil A. Kratovil, Jr., New York City (Haight, Gardner, Poor & Havens, New York City, Bert I. Weinstein, New York City, of counsel, Saverio Mirarchi, New York City, on brief), for respondents-appellants and respondents-cross-appellees.

Michael J. McAllister, New York City (Lunney & Crocco, New York City, of counsel, James G. Nugent, New York City, on brief), for petitioner-appellee-cross-appellant.

Before FEINBERG, NEWMAN and KEARSE, Circuit Judges.

FEINBERG, Circuit Judge:

Respondents A & S Transportation Co. (A & S) and Modern Transportation Co. (Modern), two affiliated transporters of sludge, appeal from an order entered in the United States District Court for the Southern District of New York, Milton Pollack, J., that compelled them to arbitrate a contract dispute with petitioner McAllister Brothers, Inc. (McAllister), a tugboat company. McAllister cross-appeals from that portion of the order that denied its petition to compel respondents Pollution Control Industries, Inc. (Pollution) and PCI International, Inc. (PCI), to participate in the arbitration. For the reasons stated below, we affirm the order insofar as it compels A & S and Modern to arbitrate their dispute with McAllister. With respect to McAllister's demand for arbitration against Pollution and PCI, we reverse the district court's determination and remand the case for further proceedings.

I

In October 1973, appellants A & S and Modern entered into a five-year contract with McAllister under which McAllister was to provide all towing required by appellants for their sludge removal operations in the Delaware River and in Puerto Rico. The contract bound appellant companies, their

"affiliates" and "subsidiaries," and "all other companies of substantially the same stock ownership" as the parent companies. Several clauses of the contract provided for the arbitration of certain disputes; at issue here is the scope and proper interpretation of one such provision—clause 4—which provided:

> 4. Modern [and A & S] shall have the right to seek Tugboat service elsewhere only if the service rendered by McAllister does not meet the standards of the industry and any disagreement with respect to this issue shall be settled in the same manner [arbitration] as set forth in Paragraph 3.

The scanty record before us indicates that from 1973 until 1977, McAllister apparently provided A & S and Modern with tugboat services, and was reimbursed at rates agreed upon under the terms of the contract. However, McAllister's services were terminated in June 1977 in the Delaware River and in June 1978 in Puerto Rico; both terminations occurred before the October 1978 expiration of the contract. McAllister objected to the cancellation of its services, and, in November 1978, served a demand for arbitration on A & S and Modern. McAllister also sought to compel Pollution and PCI to arbitrate, on the ground that both corporations were closely affiliated with Modern and A & S and were thus bound by the contract. All four companies resisted arbitration, and, in July 1979, McAllister filed a petition in the United States District Court for the Southern District of New York to compel arbitration under section 4 of the Federal Arbitration Act, 9 U.S.C. § 4.

Before Judge Pollack, A & S and Modern admitted that they had entered into an arbitration agreement with McAllister and that they had subsequently terminated McAllister's services and rejected its demand for arbitration. Both A & S and Modern contended, however, that they were not bound to arbitrate under section 4 of the Act because the contract, including the arbitration clause, had been abandoned by the parties well before the October 1978 expiration date of the contract. Pollution and PCI argued that they were not parties to the contract and were therefore not bound by the arbitration clause. McAllister, in contrast, claimed that the contract had never been abandoned, that all four companies were bound by its terms, and that the decision to terminate McAllister and seek tugboat services elsewhere raised arbitrable issues under clause 4 of the contract.

Judge Pollack, in a brief memorandum opinion, declined the request of Modern and A & S that he determine that the contract had been abandoned before the termination of McAllister's services, and instead concluded that McAllister's "claim of breach during the existence of the contract is a matter to be decided by the arbitrator pursuant to the contract." The district court reasoned that since the arbitration clause might be susceptible to an interpretation covering the dispute, arbitration should be compelled. However, the court rejected McAllister's motion to compel Pollution and PCI to arbitrate on the ground that they "were not parties to the contract to arbitrate disputes" and could not "be subjected to an arbitration merely because they are affiliated enterprises." Appellants A & S and Modern now contend that the district court erred in relegating to the arbitrator the issue whether the contract, including the arbitration clause, had been abandoned prior to the termination of McAllister's services. In the cross-appeal, McAllister argues that Pollution and PCI, as affiliates of Modern and A & S, were bound by the agreement to arbitrate. We treat these claims in separate sections.

## II

As we recently noted in *Conticommodity Services, Inc. v. Philipp & Lion*, 613 F.2d 1222 (2d Cir. 1980), a district court's scope of inquiry in considering a petition to compel arbitration under section 4 of the Federal Arbitration Act is fairly circumscribed. The relevant statutory language provides

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.

Thus, section 4 directs a district court to compel arbitration unless the "making" of an arbitration agreement, or one party's "failure, neglect, or refusal" to arbitrate is in question. However, courts have long recognized that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of America v. Warrior and Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). Accordingly, in considering a motion to compel arbitration, a district court must also make a threshold inquiry into whether the contract's arbitration provisions arguably cover the dispute at hand. In making this determination, "[d]oubts should be resolved in favor of coverage" and arbitration should be compelled "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Id. at 582–83, 80 S.Ct. at 1353.

In the present case, the initial dispute between the parties concerns whether the court or the arbitrator should pass on the claim of Modern and A & S that they cannot be compelled to arbitrate because the contract with McAllister had been abandoned before McAllister's services were discontinued. In determining whether this issue of contract termination is arbitrable, a court must first examine the potential scope of the agreement to arbitrate. If the arbitration clause is broad and arguably covers disputes concerning contract termination, arbitration should be compelled and the arbitrator should decide any claim that the arbitration agreement, because of substantive or temporal limitations, does not cover the underlying dispute. See, e. g., *Nolde Bros., Inc. v. Local 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 254, 97 S.Ct. 1067, 1073, 51 L.Ed.2d 300 (1977) (arbitration clause requiring arbitration of all disputes between parties construed to require arbitration of Union claims for severance pay first raised after termination of contract). However, as we recently noted in *Rochdale Village, Inc. v. Public Service Employees Union*, 605 F.2d 1290, 1295 (2d Cir. 1979), when "dealing with a narrower arbitration clause, a court's inquiry is not so circumscribed, and it will be proper to consider whether the conduct in issue is on its face within the purview of the clause." Hence, if the arbitration agreement cannot reasonably be construed to cover disputes over whether the contract was in force during the relevant period, arbitration need not be compelled.

In *Rochdale Village*, a union sought to arbitrate a claim that an employer had violated its collective bargaining agreement by discharging certain union members and subcontracting for services formerly provided by them. The employer resisted arbitration on the ground that the contract, which by its terms provided for automatic renewal, had nonetheless expired prior to the discharge of the employees. The district court compelled arbitration of the claim of contract termination, and a panel of this court affirmed that ruling to the extent that the employer's claim of contract termination might be based on a theory that the contract had expired by its own terms or by repudiation by the union. The panel reasoned that an assessment of either theory of contract termination necessarily required an interpretation of the contract's terms, and since the arbitration clause required the arbitration of "any" dispute arising "under"

the contract, arbitration of these issues of contract interpretation was proper. However, the record in *Rochdale Village* also raised the possibility that the contract had been terminated prior to the severance of the employees by a separate, collateral agreement between the union and the employer. Since the panel felt that the existence and effect of such a collateral agreement could not reasonably be classified as issues arising "under" the original contract, the panel remanded the case to the district court to determine whether the parties had in fact formed a side agreement to terminate their contract prior to the time in which the disputes over severance arose.

 In the present case, unlike *Rochdale Village*, the claim of abandonment is inextricably tied up with the merits of the underlying dispute; there is no colorable claim that the parties made a separate, collateral agreement to terminate the contract prior to its October 1978 expiration. Instead, A & S and Modern contend that McAllister abandoned the contract prior to the October 1978 expiration of the contract by failing to provide them with all necessary tugboat services, and that they in turn rightfully abandoned the contract by securing towage services from other tugboat companies. However, both these claimed examples of abandonment raise issues that must, under clause 4 of the contract, be resolved through arbitration. It may be that, as Modern and A & S allege, McAllister abandoned the contract by failing to provide all necessary services; if so, McAllister's deficiencies would have given Modern and A & S the right under clause 4 "to seek Tugboat service elsewhere." But, McAllister denies any such failure and it is entitled under the agreement to have an arbitrator decide the "disagreement" as to the adequacy of its service. A & S and Modern also argue that the arbitration clause does not cover a dispute as to McAllister's alleged complete cessation of service, although appellants concede that the clause would apply to a dispute over the quality of service. This argument approaches the frivolous. The arbitration clause covers "any disagreement" as to whether McAllister's tug service meets

"the standards of the industry." Presumably, not providing tugs at all would not satisfy the standards of the industry, so that an arbitrable issue is raised. Thus, the defense of abandonment, no matter how viewed, is on this record wholly derivative of issues that fall within the scope of the arbitration clause. Therefore, the district court properly compelled arbitration of McAllister's claim against A & S and Modern. Cf. *Rochdale Village*, supra, 605 F.2d at 1297 (employer's defense of contract repudiation held arbitrable because dependent on resolution of arbitrable issues).

### III

As previously noted, the contract between the three principal parties purported to bind their "affiliates," "subsidiaries," and "all other companies of substantially the same stock ownership." In the district court, McAllister argued that this language bound Pollution and PCI to the terms of the contract, including the agreement to arbitrate. Specifically, McAllister claimed that both PCI and Pollution were corporations formed by the Miele family, that these corporations owned at least one-third of the stock of Modern and A & S, that Anthony P. Miele, Jr., was the controlling shareholder of PCI and Pollution and had complete authority to bind these companies as well as Modern and A & S to the contract with McAllister, that Modern and A & S were described as affiliated companies in Pollution's annual report, and that the various dealings between the parties indicated that all four companies considered themselves bound by and acted in accordance with the terms of the contract until McAllister's services were cancelled.

 Although McAllister was apparently prepared to introduce evidence substantiating these claims, the district court, based solely on the papers submitted by the parties, concluded that Pollution and PCI were not "parties to the contract to arbitrate disputes" and could not be subjected to arbitration "merely because they were affiliated enterprises." While the rationale

for this conclusion is not apparent from the district court's brief memorandum opinion, it may be that the court believed that only signatories to an arbitration agreement can be bound by its terms. Such a conclusion, however, would be directly contrary to the established law of this circuit that a party may be bound by an agreement to arbitrate even in the absence of a signature. See, e. g., *A/S Custodia v. Lessin International, Inc.,* 503 F.2d 318 (2d Cir. 1974); *Fisser v. International Bank,* 282 F.2d 231, 235 (2d Cir. 1960). Instead, ordinary principles of contract and agency determine which parties are bound by an agreement to arbitrate.

Our uncertainty over whether the correct legal standard was applied justifies by itself a remand for reconsideration of that portion of the district court's order dismissing the petition to compel Pollution and PCI to arbitrate. However, a remand would be necessary in any event because McAllister was entitled under section 4 of the Federal Arbitration Act to a trial on the issue whether Pollution and PCI were bound by the arbitration agreement. As we have previously held, the question "whether a person is a party to [an] arbitration agreement . . . is included within the statutory issue of 'the making of the arbitration agreement.'" *Interocean Shipping Co. v. National Shipping & Trading Co.,* 462 F.2d 673, 677 (2d Cir. 1972). See also *A/S Custodia,* supra, 503 F.2d at 320. Since section 4 provides that "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof," the district court was required to hold an evidentiary hearing on McAllister's claim that Pollution and PCI were bound by the contract rather than resolve the issue solely on the basis of the parties' affidavits and memoranda of law.

While we conclude that the district court erred in not holding a trial on the issue whether Pollution and PCI were bound by the contract, we recognize the need for flexibility if fairly complex arbitration cases such as this are to be handled expeditiously. At oral argument, there was discussion of a possible procedure under which,

by stipulation, a final determination of whether Pollution and PCI are bound by the arbitration agreement along with Modern and A & S would be stayed pending arbitration of McAllister's claims against all four companies, with Pollution and PCI participating fully in the arbitration. Then, if McAllister prevails in its claims against Pollution and PCI and if Modern and A & S are unwilling or unable to satisfy the arbitral award against Pollution and PCI, a hearing can be held to determine whether the latter two entities were parties to the arbitration agreement and thus bound by the arbitrator's decision. However, we leave such agreements on procedure to the good judgment of the parties, under the guidance of the district judge.

Accordingly, on the appeal of Modern and A & S, the decision of the district court compelling them to arbitrate is affirmed. On the cross-appeal of McAllister, the determination that Pollution and PCI are not parties to the arbitration agreement is reversed and the case is remanded for proceedings consistent with this opinion.