BUTCHERS, FOOD HANDLERS AND ALLIED WORKERS UNION OF GREATER NEW YORK AND NEW JERSEY, LOCAL 174, UNITED FOOD AND COMMERCIAL WORKERS UNION, Plaintiff-Appellee,

v.

HEBREW NATIONAL KOSHER FOODS, INC., Defendant-Appellant.

No. 584, Docket 86–7840.

United States Court of Appeals, Second Circuit.

Argued Dec. 16, 1986.

Decided May 11, 1987.

284

Harold Krieger, Jersey City, N.J. (Brian N. Flynn, Krieger, Ferrara, Flynn & Catalina, Jersey City, N.J., on the brief), for plaintiff-appellee.

Gregory I. Rasin, New York City (Mark L. Sussman, Felice B. Ebelman, Jackson, Lewis, Schnitzler & Krupman, New York City, on the brief), for defendant-appellant.

Before MESKILL, KEARSE and ALTIMARI, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Hebrew National Kosher Foods, Inc. ("Hebrew National"), appeals from an order of the United States District Court for the Eastern District of New York, Thomas C. Platt, *Judge*, granting the motion of plaintiff Butchers, Food Handlers, and Allied Workers Union of Greater New York and New Jersey, Local 174, United Food and Commercial Workers Union ("Local 174") to compel arbitration under the Labor Management Relations Act, 29 U.S.C. § 185 (1982), and the Arbitration Act, 9 U.S.C. § 4 (1982), of the alleged breach by Hebrew National of a collective bargaining agreement provision concerning decisions by Hebrew National to move its operation to a location outside of Local 174's jurisdiction. On appeal, Hebrew National argues that the threshold question of whether its decision to relocate was made during the term of the collective bargaining agreement goes to the arbitrability of the dispute and thus should have been decided by the district court rather than consigned to the arbitrator. We disagree and affirm the district court's order.

BACKGROUND

Much of the background of this litigation appears to be undisputed. Hebrew National and Local 174 have had a series of collective bargaining agreements, the most

recent of which expired on June 13, 1986 ("1986 Agreement"), governing the terms and conditions of employment for employees at Hebrew National's plant in Maspeth, New York. Article 24(d) of the 1986 Agreement provided that if the parties could not adjust a grievance within two days, they would arbitrate "[a]ll grievances not involving the discharge of an employee arising between the Union and the employer, or between the employer or [sic] employees." Article 18(b) of the 1986 Agreement provided that Hebrew National

> agrees that if it decides to move its operations to another location outside the jurisdiction of Local 174, it will give notice thereof at least six (6) months before the move, and the parties will then bargain over the effects of the move, but not over the decision to move.

That article also provided that if the parties could not agree on the effects of the move, Local 174 would be relieved of its no strike pledge unless Hebrew National brought the matter to arbitration.

In April 1986, Hebrew National and Local 174 began negotiations for a successor to the 1986 Agreement. In early April, Local 174 learned from another union that Hebrew National had recently opened a plant in Indianapolis, Indiana, and heard rumors that machinery had been moved there from the Maspeth plant. According to an affidavit of Robert Wilson, Local 174's president, Wilson promptly inquired of Martin Silver, Hebrew National's executive vice president and chief negotiator, and received assurances that no relocation of work from Maspeth to Indianapolis was contemplated.

The negotiations for a new collective bargaining agreement were unsuccessful. On June 13, 1986, the 1986 Agreement expired with no replacement; on June 15, Local 174 began a strike against Hebrew National. On June 18, Hebrew National advised Local 174 by letter that "[w]e are now constrained to seriously consider relocation." According to Wilson, Silver nonetheless advised him, apparently on the same day, that Hebrew National was not in fact contemplating any relocation of work.

According to the affidavit of Silver, Hebrew National decided on July 25, 1986, to relocate part of its Maspeth operations to Indianapolis and it communicated that decision to Local 174's negotiators on that date. According to Wilson, Silver assured him several days after July 25 that Hebrew National had no real intention of relocating any part of its Maspeth operations.

According to Silver, on August 7, 1986, Hebrew National informed Local 174 that it was considering relocating all of its Maspeth operations to Indianapolis; by letter dated August 8, 1986, Hebrew National notified Local 174 that it had decided to relocate all work from Maspeth to Indianapolis. According to Wilson, Hebrew National informed Local 174 of this decision on August 7. On that date Local 174 filed a grievance and demanded arbitration concerning Hebrew National's failure to give six months' advance notice of the relocation as required by Article 18(b) of the 1986 Agreement. Hebrew National refused to arbitrate, and Local 174 commenced the present action to compel arbitration, seeking an injunction against the planned relocation. Hebrew National cross-moved to stay arbitration.

After hearing oral argument, the court granted Local 174's motion to compel arbitration. Relying on *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), and *Emery Air Freight Corp. v. Local Union 295, Int'l Brotherhood of Teamsters*, 786 F.2d 93 (2d Cir.1986) ("*Emery Air Freight*"), the court stated from the bench that "no matter how 'frivolous' the union claims appear to be on the merits and so long as it is not so plainly unreasonable that it can be seen in advance that no award to the union could receive judicial sanction it must be referred to an arbitrator." (August 28, 1986 Transcript at 5.) In a subsequent written order, the court specified the questions to be answered by the arbitrator as follows:

> 1. Did the employer decide, before June 13, 1986, to move its operation to a location outside the jurisdiction of Local 174? If the answer to this issue is "NO", the inquiry ends.

2. If, however, the answer to the above question is "Yes" the arbitrator shall answer the following questions:

a. When was the first notice given of the decision to relocate?

b. What damages or remedy, if any, should there be for any failure to give timely notice under Article 18(b) of the collective bargaining agreement?

c. Has Hebrew National refused, after giving notice of relocation, to bargain over the effects of the relocation?

Order dated September 3, 1986. The court denied Local 174's motion for an injunction against the relocation and denied Hebrew National's motion to stay arbitration.

Hebrew National has appealed from so much of the order as compelled, and refused to stay, arbitration. Local 174 has not cross-appealed from the denial to it of other requested relief.

## DISCUSSION

■■■ General principles governing the arbitrability of labor disputes are well established. There is no obligation to submit a dispute to arbitration unless the parties have contracted to do so. *E.g., AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (*"AT & T Technologies"*); *Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960) (*"Warrior & Gulf"*) ("arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit"). The question of whether the collective bargaining agreement creates a duty to arbitrate the particular dispute is to be resolved by the court, not the arbitrator. If the contract contains a clause requiring the parties to submit disputes to arbitration, the court should resolve any doubt as to whether a particular dispute falls under that clause in favor of ordering arbitration. As the Supreme Court has recently reaffirmed,

where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order

to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

*AT & T Technologies,* 106 S.Ct. at 1419 (quoting *Warrior & Gulf,* 363 U.S. at 582–83, 80 S.Ct. at 1352–53).

■■■ On this appeal, Hebrew National relies only on the most general of these principles in contending that it should not be compelled to arbitrate the question of whether its relocation decision was made during the term of the 1986 Agreement. As the argument goes, the existence of the duty to arbitrate is a question for the court; if the decision to relocate was made after the 1986 Agreement expired, there was no contractual duty to bargain and hence there is no duty to arbitrate; thus the question of *when* the decision was made is a question for the court. This argument is flawed because it homogenizes two types of fact questions that must be distinguished in recognizing the proper allocation of questions between the court and the arbitrator. The fact questions that control the issue of whether there exists a duty to arbitrate include such matters as who is a party to the agreement, *see, e.g., McAllister Bros. v. A & S Transportation Co.,* 621 F.2d 519, 524 (2d Cir.1980), and what types of matters the parties have agreed to submit to arbitration, *see, e.g., AT & T Technologies,* 106 S.Ct. at 1418–19. These questions are to be decided by the court. In contrast, issues such as what events, other than contract formation events, have occurred, and whether in particular an alleged event that would have constituted a breach of the agreement actually occurred, go to the merits of the dispute rather than to its arbitrability. These questions must be sent to the arbitrator for, as the Supreme Court has cautioned, in deciding the arbitrability issue, "a court is not to rule on the potential merits of the underlying claims." *Id.* at 1419; *Steelworkers v. American Mfg. Co.,* 363 U.S. at

568, 80 S.Ct. at 1346; *see Emery Air Freight*, 786 F.2d at 96–97.

■ Where a claim has been presented during the course of the contract, it is often a relatively simple matter to place a given fact question in one of these categories or the other. For example, at the oral argument of this appeal, counsel for Hebrew National conceded that, had Local 174 asserted prior to the June 13 expiration of the 1986 Agreement that a decision to relocate had been made, the question of whether or not such a decision had in fact been made would clearly have been one to be answered by the arbitrator. The introduction of variations in timing, however, makes the allocation less automatic. Thus, where, as here, a claim is first made after the expiration of the contract, and there is no dispute as to whether an event has occurred but only as to the timing of its occurrence, it cannot be said categorically that the question of the timing of the event is for one decision-maker or the other, for it is possible that the parties have, by the terms of their agreement, foreclosed any arbitration of any claims first raised after the expiration of the agreement. The case law discussed below, governing claims that arise after the expiration of a collective bargaining agreement, establishes that where the post-contract claim asserts that an event of an arbitrable type occurred during the term of the contract, that assertion is sufficient to warrant the court's finding the claim arbitrable so long as the parties have not, by their contract, prohibited the post-contract assertion of such claims.

■ There is no general rule that termination of the collective bargaining contract automatically extinguishes a party's duty to arbitrate grievances arising under the contract. *See Nolde Bros. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 250–51, 97 S.Ct. 1067, 1071, 51 L.Ed.2d 300 (1977) ("*Nolde*"); *Emery Air Freight*, 786 F.2d at 97–98. Rather, the duration of the duty to arbitrate must be determined by fathoming the intent of the parties as revealed by the contract. If the contract does not state that the duty to arbitrate ends with the termination of the contract, the strong policies favoring arbitration should ordinarily lead the court to conclude that the obligation to arbitrate—especially as to claims that accrued during the term of the contract—survives the expiration of the contract. In *Nolde*, the collective bargaining agreement expired, and four days later the employer closed its plant; the union promptly demanded severance pay for the terminated workers and sought arbitration when the employer rejected the severance pay demand. The Supreme Court affirmed the circuit court's ruling that the contractual obligation to arbitrate "any grievance" arising between the parties survived the expiration of the collective bargaining agreement, stating as follows:

> The severance-pay dispute, as we have noted, would have been subject to resolution under those [arbitration] procedures had it arisen during the contract's term. However, even though the parties could have so provided, there is nothing in the arbitration clause that expressly excludes from its operation a dispute which arises under the contract, but which is based on events that occur after its termination. The contract's silence, of course, does not establish the parties' intent to resolve post-termination grievances by arbitration. But in the absence of some contrary indication, there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract.

430 U.S. at 252–53, 97 S.Ct. at 1072–73. Thus, though even the events on which the arbitration demand in *Nolde* was based occurred after expiration of the contract, the employer was held obligated to arbitrate. En route to this conclusion, the Court noted that as to events occurring during the term of the contract, it is open to the parties to agree either that demands for arbitration must be made prior to the expiration of the contract or that such demands may be made post-expiration:

> The parties may have intended, as Nolde maintained, that any substantive claim to

severance pay must surface, if at all, during the contract's term. However, there is also "no reason why parties could not if they so chose agree to the accrual of rights during the term of an agreement and their realization after the agreement had expired."

430 U.S. at 249, 97 S.Ct. at 1071 (quoting *John Wiley & Sons v. Livingston*, 376 U.S. 543, 555, 84 S.Ct. 909, 917, 11 L.Ed.2d 898 (1964)).

In the present case, the district court's order compelling arbitration is consistent with all of the principles discussed above. The arbitrability of the present claim depended only on whether the claim was of a type that the 1986 Agreement committed the parties to arbitrate and whether the parties had, in that agreement, left open the possibility of post-contract assertion of claims. The court correctly answered both questions in the affirmative. There is no question that the arbitration provisions of the 1986 Agreement are broad enough to cover the type of grievance filed here. The general provision governed "[a]ll grievances," and the relocation provision explicitly referred to arbitration. There is no provision in the 1986 Agreement indicating that the parties intended that the duty to arbitrate with respect to the effects of a decision to relocate made during the term of the contract was to terminate automatically with the expiration of the contract.

Since the 1986 Agreement permitted the post-contract assertion of claims and required the parties to submit to arbitration claims regarding relocation decisions made during the term of the contract, the court was required to conclude that a post-contract claim that a relocation decision had been made during the term of the contract was arbitrable. The question of whether, as the union alleges, such a pre-expiration decision was in fact made goes to the merits of the dispute rather than to its arbitrability. The court correctly concluded that that question may properly be decided only by the arbitrator.

Finally, we note that the denial of arbitration in the face of a claim such as the present one could unjustly reward an employer who, wishing to avoid arbitration over the effects of a particular decision, simply concealed the fact of its decision until the collective bargaining agreement had expired. This is a strong reason to resolve any lingering doubt in favor of compelling arbitration. *Cf. Nolde*, 430 U.S. at 253, 97 S.Ct. at 1073; *Rochdale Village, Inc. v. Public Service Employees Union, Local No. 80*, 605 F.2d 1290, 1297 (2d Cir. 1979) ("the strong presumption of arbitrability in the labor relations area prevents a breach-created discharge of the contractual duty to arbitrate disputes arising 'under' the contract").

## CONCLUSION

The order of the district court granting Local 174's motion to compel arbitration and denying Hebrew National's motion to stay arbitration is affirmed. We of course express no view as to the merits of the grievance.