**HYGIENE INDUSTRIES, A DIVISION OF ASSOCIATED PRODUCTS, INC., Plaintiff,**

v.

**PLASTIC, METAL, NOVELTY AND AL-LIED WORKERS' UNION LOCAL 132–98, I.L.G.W.U., Defendant.**

**No. 89 Civ. 6004 (MEL).**

United States District Court, S.D. New York.

Oct. 6, 1989.

Jackson, Lewis, Schnitzler & Krupman, New York City (James R. Williams, Felice B. Ekelman, of counsel), for plaintiff.

Chaikin & Chaikin, New York City (Eric B. Chaikin, of counsel), for defendant.

LASKER, District Judge.

Hygiene Industries ("Hygiene"), moves to enjoin Plastic, Metal, Novelty and Allied

Workers' Union, Local 132–98, I.L.G.W.U. (the "Union"), from proceeding with the arbitration of its grievance relating to the proposed closing of two Hygiene plants. The issue is whether the matter is arbitrable, and more particularly whether the Union should be precluded from submitting the dispute to arbitration because the agreement containing the arbitration clause may expire prior to the proposed plant closings. For the reasons stated below, Hygiene's motion to enjoin the arbitration is denied.

### I.

Hygiene manufactures shower curtains at a number of production facilities, including two facilities located in Brooklyn, New York. For many years Hygiene was a member of the Plastics Soft Materials Manufacturers' Association, Inc. (the "Association") and in that capacity has been a party to a series of collective bargaining agreements between the Association and the Union covering its Brooklyn facilities. The most recent of these was entered into December 16, 1986 and will expire December 15, 1989.

In 1983, Hygiene opened a new facility in Sardis, Mississippi and transferred some work from its Brooklyn facilities to Sardis. Pursuant to the then-existing contract, the Union grieved this action, and on January 27, 1984 the parties executed a settlement agreement resolving the matter ("Settlement Agreement").

In consideration of the Union's withdrawal of its grievance, the Settlement Agreement provides:

> There shall be a guaranteed level of employment for Hygiene's regular employees of the [Brooklyn] Facility (including not more than five (5) trial period employees) equal to three hundred (300) of such employees (hereinafter "Base Level Employees" or "Base Level of Employment"). Base Level Employees shall, during the term of this agreement, be guaranteed their regular hours of employment pursuant to the Association Agreement.[1]

The Settlement Agreement is silent with regard to its own duration. The question of when the Settlement Agreement expires lies at the heart of the current dispute.

On May 18, 1989, Hygiene advised the Union by letter that it had withdrawn from the Association and that it intended to close permanently its two production facilities in Brooklyn after the expiration of the Association Agreement on December 15, 1989. The letter stated: "Hygiene hereby notifies the Union pursuant to 29 U.S.C. § 158(d) of Hygiene's proposed termination of this Collective Bargaining Agreement and any supplemental agreements to which Hygiene and your Union are parties, effective as of that December 15, 1989 expiration."[2]

In its letter dated May 18, Hygiene requested a meeting to discuss the effects of the closure of its Brooklyn facilities upon the employees the Union represents. By letter dated July 20, 1989 the Union advised Hygiene that their collective bargaining agreement would expire December 15, 1989 and requested a meeting with Hygiene to negotiate a new agreement. Since that time, four such meetings have taken place.

At those meetings (held on July 5th, July 18th, August 2nd and August 10th) the Union asserted that the Settlement Agreement precluded Hygiene from closing its Brooklyn operations. Hygiene reiterated that it would not maintain any of its operations in Brooklyn and would not keep a product line in Brooklyn after December 15, 1989. The president of the Union then stated that the Union would pursue arbitration.

On August 3, 1989, counsel for the Union submitted a written grievance to Marshall L. Rosenberg, Esq., the designated impar-

---

**1.** Affidavit of Richard Guggenheimer ("Guggenheimer Affidavit") (September 8, 1989), Exhibit B, Settlement Agreement Between the Rubberized Novelty and Plastic Fabric Workers' Union, Local 98, I.L.G.W.U. and Hygiene Industries, dated January 27, 1984, at ¶ 1.

**2.** Guggenheimer Affidavit, Exhibit D, Letter from Richard Guggenheimer, Senior Vice President, Hygiene Industries to William Lee, President, Local 132–98, dated May 18, 1989.

tial chairman pursuant to the Association Agreement. The grievance states:

> The Union asserts the Employer has declared its intent to violate the express terms of both the January 27, 1984 Settlement Agreement and the Association Agreement by threatening closure of the New York facility and the livelihood and welfare of over 300 members. We would request an Order requiring the employer to maintain its New York facilities under the current and successor Association Agreements in compliance with the Settlement Agreement. We would also seek back pay, lost benefit fund contributions and any other damages resulting from the Employer's actions in moving to close the New York facility.[3]

The Union also requested "an immediate Order maintaining the *status quo* and restraining the Employer from any such conduct pending a determination of this matter on the merits."[4] An arbitration was scheduled for September 21, 1989; the parties have agreed to stay the arbitration and maintain the status quo pending a decision by this court.

> The Settlement Agreement provides:
> The parties agree to submit any and all disputes, claims and controversies whatsoever between them arising under, out of or in connection with, or in any manner related to this Settlement Agreement to final and binding Arbitration pursuant to the arbitration provisions of the Association Agreement.[5]

The arbitration clause of the Association Agreement provides:

> Any and all disputes, complaints, controversies, claims and grievances whatsoever between the Association or any of its members and the Union or any of the workers covered by this agreement, arising under, out of or in connection with, or in any manner related to this agreement, including, but without limitation, any claim arising out of any alleged dissolution or termination of the business of any member of the Association prior to the expiration of the term of this agreement, shall be taken up for settlement and adjustment by representatives of the Union and the Association. Should any such matter not be fully adjusted as aforesaid, it shall be submitted to the Labor Board hereinabove referred to. Should the Labor Board fail to agree or fully adjust the matter, or at the request of either party without submission of the matter to the Labor Board, the matter shall be submitted to arbitration before the Impartial Chairman hereinafter named, or designated as hereinafter provided, as Arbitrator, whose award shall be final and binding in addition to granting such other relief as he may deem proper, the award of the Impartial Chairman may contain provisions directing or restraining acts and conduct of the parties. Any such award may be enforced by appropriate proceedings in law or equity.[6]

Hygiene argues that the Union's claim that Hygiene's anticipated closure of its Brooklyn facilities after December 15, 1989 violates the parties' Settlement Agreement is not an arbitrable dispute because it concerns an action that will not occur until after both the Association Agreement and the Settlement Agreement expire and does not concern a right which accrued during the life of either agreement.

Hygiene asserts that during the course of negotiations leading up to the Settlement Agreement the parties reached an understanding that the Settlement Agreement would be coterminous with the Association Agreement. In support of this posi-

---

**3.** Guggenheimer Affidavit, Exhibit G, Letter from Eric Chaikin to Marshall L. Rosenberg, Impartial Chairman, dated August 3, 1989.

**4.** *Id.*

**5.** Guggenheimer Affidavit, Exhibit B, Settlement Agreement Between the Rubberized Novelty and Plastic Fabric Workers' Union, Local 98, I.L.G.

W.U. and Hygiene Industries, dated January 27, 1984, at ¶ 3.

**6.** Guggenheimer Affidavit, Exhibit A, Collective Agreement Between Plastic Soft Materials Manufacturers' Association and Plastic, Metal, Novelty and Allied Workers' Union Local 132–98, Fabric Workers' Union Local 98, I.L.G.W.U., dated December 16, 1986, at ¶ 38.

tion, Hygiene points to Paragraph 5 of the Settlement Agreement which states: "The terms and provisions of the Association Agreement and successor Association Agreements shall be binding upon Hygiene as modified by this Settlement Agreement." [7] Hygiene interprets this language to mean that the Settlement Agreement is a modification of the Association Agreement and therefore, the continued survival of the Settlement Agreement is contingent upon the existence of an Association Agreement to which Hygiene is a signatory. According to Hygiene the reference to "Association Agreement*s*" (emphasis added) in the plural in paragraph 5 indicates the parties' understanding that the Settlement Agreement would modify any future Association Agreements to which Hygiene was a party. Hygiene submits that if, as the Union asserts, the parties intended the Settlement Agreement to exist for as long as Hygiene operated facilities in Mississippi, the Agreement would have so provided.

The Union claims that "the Settlement Agreement specifically, in [paragraph 5], binds Hygiene to follow the terms and provisions of the then current Association Agreement and successor Association Agreement*s*, (plural) regardless of Hygiene's membership in the Association except as modified by the Settlement Agreement." [8] The Union represents that it will describe to the arbitrator events which took place during the bargaining process, which will establish that the duration of the Settlement Agreement was tied to Hygiene's continuing operation of its facility in Sardis, Mississippi and not to Hygiene's participation in the Association Agreement. The Union maintains that its grievance, which seeks guidance as to the interpretation of the terms of the Association Agreement and the Settlement Agreement, falls squarely within the broad arbitration clauses found in those agreements.

## II.

This court may issue a preliminary injunction only upon

a showing of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly toward the party requesting the preliminary relief.

*Consolidated Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252, 256 (2d Cir.1989) (citing *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979)).

 It is clear that Hygiene would suffer irreparable harm if compelled to submit to arbitration of a dispute outside the scope of the arbitration provision to which it agreed. Further, Hygiene has raised "sufficiently serious questions going to the merits to make them a fair ground for litigation." However, it cannot be said that a balance of the hardships tips in favor of either party. Therefore, the availability of injunctive relief in this situation depends upon the probability of success on the merits. As explained below, Hygiene has not demonstrated that it will probably succeed on the merits.

 Arbitration is a matter of contract, and therefore parties cannot be compelled to arbitrate a dispute which they did not agree to submit to arbitration. *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986); *Butchers, Foodhandlers, and Allied Workers Union of Greater NY and NJ, Local 174 v. Hebrew National Kosher Foods, Inc.*, 818 F.2d 283, 286 (2d Cir.1987). Generally, an employer's duty to arbitrate expires with the collective bargaining agreement which brought the right or obligation to arbitrate into existence. *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). A court, not the arbitrator, is the forum for determining whether the parties to a collective bargaining agreement have agreed to arbitrate a

---

7. Guggenheimer Affidavit, Exhibit B, Settlement Agreement at ¶ 5.

8. Statement of Facts and Defendant's Memorandum of Law in Opposition to Plaintiff's Requested Stay of Arbitration ("Defendant's Memorandum") (September 15, 1989), at p. 8.

particular dispute. 363 U.S. at 582, 80 S.Ct. at 1352; *Rochdale Village, Inc. v. Public Serv. Employees Union, Local 80,* 605 F.2d 1290, 1295 (2d Cir.1979).

However, the power of the court is limited to determining whether the dispute falls within the scope of the arbitration clause agreed to by the parties. The Supreme Court has declared that:

> The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertain whether the party seeking arbitration is making a claim which on its face is governed by the contract ...
>
> ....
>
> ... The courts therefore have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim.

*United Steelworkers of America v. American Mfg.,* 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960) (footnote omitted).

Federal policy strongly favors arbitration of labor disputes. *United Steelworkers of America v. American Mfg Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Therefore,

> In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from the arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad.

*United Steelworkers,* 363 U.S. at 584–85, 80 S.Ct. at 1354.

As the Second Circuit has stated:

The nub of the matter is that under the broad and comprehensive standard labor arbitration clause every grievance is arbitrable, unless the provisions of the collective bargaining agreement concerning grievances and arbitration contain some clear and unambiguous clause of exclusion, or there is some other term of the agreement that indicates beyond peradventure of doubt that a grievance concerning a particular matter is not intended to be covered by the grievance and arbitration procedure set forth in the agreement.

*Procter and Gamble Independent Union v. Procter & Gamble Mfg.,* 298 F.2d 644, 645–46 (2d Cir.1962).

Therefore, "[i]f a court finds that the parties have agreed to submit to arbitration disputes 'of any nature or character,' or simply 'any and all disputes,' all questions, including those regarding termination, will be properly consigned to the arbitrator." *Rochdale,* 605 F.2d at 1295.

The Settlement Agreement between Hygiene and the Union provides for the arbitration of "any and all disputes, claims, and controversies whatsoever between them arising under, out of or in connection with, or in any manner related to this Settlement Agreement." [9] There is no clause of exception excluding from arbitration a dispute over the expiration date.

Hygiene acknowledges that in order to determine whether the parties have agreed to submit the underlying dispute to arbitration, "the Court must determine the expiration date of the Settlement Agreement." [10] If it were clear on the face of the Settlement Agreement that it expired at the same time as the current Association Agreement, i.e., on December 15, 1989, then the Union's grievance would not be arbitrable because it would involve events which will not occur until after all the agreements between Hygiene and the Union have expired. However, where, as here, there is no explicit expiration date and no "clear and unambiguous clause of exclusion" barring the arbitration of the

---

**9.** Guggenheimer Affidavit, Exhibit B, Settlement Agreement at ¶ 3.

**10.** Letter from James R. Williams to the Court (September 19, 1989), at p. 2.

dispute about the expiration date, then the arbitrator, not the court, must interpret the Settlement Agreement in order to determine that date.

The expiration date of the Settlement Agreement is not clear from the face of the Agreement. The parties offer competing interpretations of the Settlement Agreement on this point, each of which suggests a different expiration date. The Union argues that "Hygiene, whether a member of the Association, or not, agreed to be bound by the terms of the successor Association Agreements."[11] Hygiene asserts that "this Court should not construe the Settlement Agreement to require perpetual performance where a more rational construction can be applied."[12] Given the broad arbitration clause agreed to by the parties, the law does not permit the court to construe the Settlement Agreement at all, but leaves the decision between competing interpretations to the arbitrator. Accordingly, Plaintiff's motion is denied.

The proposed arbitration is stayed for a period of ten days from the filing of this Opinion to enable Hygiene to apply to the Court of Appeals for a further stay.

It is so ordered.

11. Defendant's Memorandum, at p. 26.

12. Memorandum of Law in Support of Plaintiff's Application to Stay Arbitration (September 11, 1989), at p. 17.