**HARTFORD AIRCRAFT LODGE 743, INTERNATIONAL ASSOCIATION OF MACHINISTS & AEROSPACE WORKERS, AFL–CIO, Plaintiff–Appellee,**

v.

**HAMILTON SUNDSTRAND CORP., Defendant–Appellant.**

No. 06–0703–cv.

United States Court of Appeals, Second Circuit.

Jan. 10, 2007.

Henry A. Platt, Saul Ewing, LLP, Washington, D.C. (Edward J. Dempsey, United Technologies Corporation, Hartford, CT, on the brief), for Appellant.

Mary E. Kelly, Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C. (Gregg D. Adler, on the brief), Hartford, CT, for Appellee.

PRESENT: Hon. DENNIS JACOBS, Chief Judge, Hon. GUIDO CALABRESI, Circuit Judge, and Hon. JOSEPH F. BIANCO,[1] District Judge.

### *SUMMARY ORDER*

Defendant-appellant Hamilton Sundstrand Corporation (the "Company") appeals from the December 5, 2005 judgment of the United States District Court for the District of Connecticut (Hall, *J.*) granting the petition by plaintiff-appellee Hartford Aircraft Lodge 743 (the "Union") to compel arbitration. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

Because the district court, exercising jurisdiction under 29 U.S.C. § 185(a), granted arbitration as the only relief sought (before closing the case on its docket), we have jurisdiction to review the district court's decision as a final order under 28 U.S.C. § 1291. *See Coca–Cola Bottling Co. of N.Y., Inc. v. Soft Drink & Brewery Workers Union Local 812*, 242 F.3d 52, 54–56 (2d Cir.2001). We review *de novo* a district court's order compelling arbitration. *See Abram Landau Real Estate v. Bevona*, 123 F.3d 69, 72 (2d Cir.1997).

In ascertaining whether a particular dispute is within the scope of an arbitration agreement, the court must give effect to the federal policy favoring arbitration by resolving ambiguities in favor of ordering arbitration. *See Volt Info. Servs., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989); *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

At the outset, we ordinarily decide whether the clause is "broad" or "narrow." *See Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 252 F.3d 218, 224 (2d Cir.2001). But whether the clause here is broad or narrow is not a useful inquiry in this case. The Union concedes that disputes under Article 28 are not subject to arbitration unless the Company consents. And the Company conceded earlier in the litigation that disputes genuinely arising from Letter 21 are subject to arbitration. *See Hartford Aircraft Lodge 743 v. Hamilton Sunstrand Corp.*, 403 F.Supp.2d 200, 211 n. 6 (D.Conn.2005). A broad clause's "presumption of arbitrability" would be rebutted by our finding the dispute within the scope of the Article 28 exclusion, and a narrow clause would not expand the Article 28 exception to arbitrability beyond its express terms.

Article 28 deals with the Company's intent to notify the Union of any decision to transfer work from the plant, to provide certain information about that decision, and to meet and confer in the period after that notice; it is expressly exempted from any mandatory arbitration. Letter 21, which is attached to the primary articles of the CBA, establishes a joint management-union committee that meets periodically to study issues of competitiveness and productivity impacting job security for the bargaining unit, which "Committee shall have access to information concerning manufacturing costs, productivity, scheduling, business and staffing plans affecting the bargaining unit and such other information as mutually deemed relevant by the parties." Letter 21 contains no exemption from the arbitration clause that otherwise prevails.

---

**1.** The Honorable Joseph F. Bianco of the United States District Court for the Eastern District of New York, sitting by designation.

Article 28 and Letter 21 do not refer to one another, and they operate independently of each other: Article 28 contemplates discussions between the Union and the Company about decisions the Company has made, while Letter 21 contemplates an ongoing good-faith cooperative process to jointly address potential problems impacting job security.

The Union's initial grievance, which was filed days after the Company informed the Union of the Company's intent to move work, alleged that the Company made its decision "without first discussing with the Union, despite multiple requests, any problems affecting productivity, competitiveness, or job security in that area as agreed to in Letter 21 of the CBA." The Union filed affidavits from two Letter 21 committee members, who claim that at Letter 21 meetings before and after the Article 28 announcement, they unsuccessfully requested from the Company more detailed information concerning costs and productivity. The Union also claims that the Company had conducted studies about the necessity for moving work away from the Windsor Locks plant but withheld these studies from the Union's Letter 21 committee members. In short, the Union's grievance is based on the allegation that, even if the Company followed the Article 28 procedures exactly, it had already breached its obligations under Letter 21 by withholding critical information at committee meetings.

It may be that the Union will fail to prove its factual allegations, or that the Company will eventually succeed in its arguments that Letter 21 creates no obligation to provide particular information to the Union before announcing its decision to move work away from a particular plant. But these are arguments on the merits that cannot be considered in determining whether a dispute is arbitrable.

*See AT & T,* 475 U.S. at 649, 106 S.Ct. 1415 (in deciding arbitrability, "a court is not to rule on the potential merits of the underlying claims"); *Butchers, Food Handlers & Allied Workers Union v. Hebrew Nat'l Kosher Foods, Inc.,* 818 F.2d 283, 286 (2d Cir.1987) ("[I]ssues such as what events, other than contract formation events, have occurred, and whether in particular an alleged event that would have constituted a breach of the agreement actually occurred, go to the merits of the dispute rather than to its arbitrability.").

The Company also argues that the dispute cannot be submitted to arbitration because of express limitations on the arbitrator's power under the arbitration clause. Article 7, Section 3(e) of the CBA reads:

> [T]he Arbitrator [shall not] have jurisdiction in any case submitted to arbitration to affect in any way, directly or indirectly, by any decision or in any other manner, the right and responsibility of the Company to direct its operations; to determine the number and location of its plants; . . . [or] the types of work to be performed. . . .

This limitation on the power of an arbitrator to grant certain types of relief does not impact the scope of issues the parties agreed to arbitrate. It is unknown at this stage what relief (if any) could be available to the Union if it should otherwise prevail in the arbitration. If the Union seeks to prevent the Company from moving work away from the Windsor Locks plant (the Union has represented that it will not), the Company could argue to the arbitrator that there is no arbitral power to grant such relief; if an arbitrator does grant prohibited relief, the Company is free to come to federal court to vacate the award. But it would be premature for this Court to decide that a dispute within the scope of the arbitration clause cannot possibly re-

sult in relief that is permissible under the arbitration clause: the appropriate relief— if any—is a matter for the Union to claim and for the arbitrator to decide. *See Carey v. Gen. Elec. Co.*, 315 F.2d 499, 508 (2d Cir.1963).

We have considered all of the Company's remaining arguments and find them to be without merit. For the reasons set forth above, the judgment of the district court is hereby **AFFIRMED**.